1
2
3
4
5

# UNITED STATES DISTRICT COURT

6

## DISTRICT OF NEVADA

7
8

PACIFIC COAST STEEL, *et al.,*                    )
                                                  )
9                        Plaintiffs,              )        Case No. 2:09-cv-02190-KJD-PAL
                                                  )
10   vs.                                          )                    **ORDER**
                                                  )
11   TODD LEE LEANY, *et al.,*                    )        (Defts' Renewed Mot Prot Ord - Dkt. #101)
                                                  )
12                       Defendants.              )
     _____ )
13

14        The court conducted a hearing on August 12, 2010, on Defendants' Renewed Motion for

15   Protective Order and for Return of Privileged Documents (Dkt. #101) filed July 10, 2010.  Paul Prior,

16   James Kilroy and Rick Gordon appeared on behalf of the Plaintiffs, and Russ Gubler, Ryan Lower,

17   Todd Prall and Michael Wall appeared on behalf of the Defendants.  The court has considered the

18   Motion, Plaintiffs' Response (#112), Defendants' Reply (Dkt. 115), Plaintiffs' Supplement (Dkt. #118),

19   and arguments of counsel.

20   **I.        Plaintiffs' Motion (Dkt. #101)**

21        Defendants seek the return of privileged and confidential documents that Plaintiffs acquired

22   when they suspended and terminated Todd Leany from his employment at PCS and seized the computer

23   he used there.  Defendants assert the emails are protected by either the attorney-client privilege, the

24   account-client privilege, or the husband-wife marital privilege.

25        Defendants assert PCS had no policies concerning the personal use of work computers, and

26   while he worked there, Leany sent and received emails from his attorneys, accountants, his wife, and

27   members of his church congregation.  Leany claims that when he was terminated from PCS, he was not

28   given an opportunity to remove the confidential and privileged information from his computer, his

1   emails, or his office.  PCS allowed him to take copies of his computer and files, but it maintained

2   complete control over everything in his computer and personal files.

3          Defendants seek a protective order prohibiting Plaintiffs from inquiring into certain matters that

4   encompass privileged, confidential documents that Plaintiffs obtained when they seized Leany's

5   computer.  They also seek an order requiring Plaintiffs to return any privileged and confidential

6   documents to Defendants and precluding the Plaintiffs from using them in this litigation.

7          Plaintiffs have disclosed emails between Todd Leany, the Century Entities, and their agents,

8   employees, or assigns, and their respective counsel.  This includes correspondence between Todd

9   Leany, Bud Stoddard, Chris Albright, Mark Albright, and others at the law firm Albright Stoddard

10  Warnick & Albright ("ASWA"); emails between ASWA and agents of the Century Entities, including

11  employees and/or officers of the Century Entities such as Steve Fellows, CFO of the Century Entities

12  until Todd Leany's termination, and Amanda Hunsaker, an employee of the Century Entities.  Leany

13  also sent emails to attorney Gregory Morris for estate planning.  Additionally, Plaintiffs have disclosed

14  emails between Todd Leany and his accountants or representatives of his accountant.  Plaintiffs also

15  have communications between Todd Leany and his wife, Shelly Leany, that are protected by NRS

16  49.295.  Finally, Plaintiffs are in possession of Leany's personal financial documents, including income

17  tax records, and they should not be permitted to use them in any manner during this litigation because

18  general policy and equity considerations protect Todd Leany's taxpayer privacy.

19         Plaintiffs refused to return the privileged emails and would not agree not to use them at Mr.

20  Leany's deposition.  Leany argues he did not waive any of the privileges he claims in this motion by

21  using a PCS-owned work computer to receive and send privileged communications and store personal

22  and confidential information.  He argues he had a reasonable expectation of privacy when using his

23  computer for personal and confidential correspondence.  He also claims PCS had no policy concerning

24  personal use of computers or email, and that PCS did not monitor his computer usage, or if they did, he

25  was not aware of it.

26         Leany acknowledges that under the terms of the parties' Asset Purchase Agreement ("APA")

27  that certain privileged communications belonging to the Century entities were sold to PCS.  These

28  communications regard mechanic lien litigation and ongoing construction defect claims.  However,

2

1  Leany claims that other privileged communications on the work computer he used that involved
2  property and assets of Todd Leany or ongoing business of the Century entities that were not sold under
3  the APA remain privileged.

4       Leany began working as a Vice President for PCS under an Employment Agreement dated April
5  1, 2008.  He was given his own private office and used the same computer he had been using prior to
6  Plaintiffs' acquisition of the Century entities.  In late October and early November 2009, PCS
7  suspended and then terminated him.  Under these circumstances, Leany argues the court should exercise
8  its broad discretion to issue a protective order under Rule 26(c) and enter an order forbidding inquiry
9  into certain matters, or limiting the scope of discovery to certain matters as authorized by Rule
10  26(c)(1)(D).

11       Leany argues that he is the holder the attorney-client privilege, and has not waived the privilege
12  with respect to communications between him and his legal counsel, Bud Stoddard, Chris Albright,
13  Mark Albright, and others of the law firm of Albright, Stoddard, Warnick & Albright.  He also claims
14  the attorney-client privilege would extend to communications between the law firm and any agents of
15  the Century entities, including employees and/or officers of the Century entities such as Steve Fellows,
16  the CFO of the Century Entities until Todd Leany was terminated, and Amanda Hunsaker.  Leany also
17  argues that he is the holder of the accountant-client privilege under Nevada, that only the holder of the
18  privilege may waive it, and that he has not waived his accountant-client privilege.  He argues
19  communications between him and his accountants which were left on the computer are privileged.  He
20  also argues that communications he had with his wife are subject to the marital privilege under NRS
21  49.295, and that the court should enter a protective order precluding Plaintiffs from questioning either
22  Todd Leany or his wife, Shelly, regarding communications made one to the other during their marriage.

23  **II.    Plaintiffs' Response (Dkt. #112)**

24       Plaintiffs dispute that the documents left on Leany's work computer were privileged and argue
25  that, even if they were privileged, Leany has waived applicable privileges.  Plaintiffs are willing to
26  return the irrelevant materials they found on Leany's PCS computer.  The communications at issue
27  establish Defendants acted to defraud and convert millions of dollars from Plaintiffs, giving rise to the
28  present litigation.  Many of the documents at issue show how Defendants used various transactions to

3

1   conceal their misappropriation of Plaintiffs' money and frustrate the purpose of the APA and

2   employment and non-compete agreements of Todd Leany.

3           Plaintiffs contend the correspondence they found on Leany's computer which was generated,

4   after he began working as an Executive Vice President for PCS, is relevant to show Defendants violated

5   the terms of the APA.  Correspondence also shows that Leany was involved with other companies that

6   were in direct competition with PCS after the parties entered into the APA.  Many of the exchanges

7   stand in stark contrast to the position Defendants have taken in this litigation and establish Defendants'

8   systematic intent to circumvent the APA and fraudulently induce Plaintiffs to enter into it.

9           Plaintiffs assert they attempted to meet and confer with Defendants to narrow the scope of

10  documents involved in this dispute, and it was Defendants who were unwilling to meet, cancelling

11  meetings and sending revised privilege logs.  Defendants' unwillingness to meet and confer should

12  result in denial of their motion.

13          Plaintiffs also argue that Leany made no attempt to preserve the confidentiality of the

14  purportedly privileged documents he now seeks to protect from disclosure.  Leany knew PCS had

15  possession of the Century e-mail server and was fully informed and consented to the proposed PCS-

16  Century e-mail migration that effectively merged all Century pre-acquisition communications into a

17  single PCS server.  Leany also had full knowledge of the corporate policies of both Century and PCS

18  regarding the use of company computers.  PCS asserts Century had a well-defined computer and

19  electronic records policy that its principal, Leany, was quite familiar with.  The Century policy

20  instructed its employees that the computer systems are the property of Century and their use is limited

21  to business-related activities.  Plaintiffs argue that PCS's internet and e-mail usage policy was even

22  more clear.  Under the PCS policy, any software or files, including e-mails downloaded via the internet

23  into the company network, become the property of the company.  The policy was drafted by David

24  Perkins, who provided an affidavit to support the Plaintiff's position.  Mr. Perkins avers that, not only

25  was the policy available to all employees, but also that he had personal conversations with Todd Leany

26  about corporate internet policies.  According to Mr. Perkins' declaration, Todd Leany was so proud of

27  the internet policy at Century, he asked PCS to adopt the Century Employment Manual, which

28  contained the provision that Century computers would be used for company business only.  Perkins also

4

1  avers that he personally delivered a copy of the PCS Corporate Policy Manual, including its written

2  internet and computer usage policy, to Todd Leany.  The policy contains explicit language including a

3  provision that PCS employees were on notice that PCS had software and systems in place to monitor

4  and record all internet usage; that its director of information system or designee will review internet

5  activity and analyze usage patterns; and that internet access, including e-mail messaging, is allowed

6  with the understanding there will be no expectation of privacy by users.

7       Additionally, Plaintiffs argue that Leany testified at his deposition that on multiple occasions he

8  and/or IT personnel at Century monitored the e-mail and internet usage of certain Century employees.

9  Leany was also aware of PCS' practice to monitor e-mail and internet usage because in the spring of

10  2009, and in conjunction with the Harmon Tower litigation pending in Las Vegas, PCS needed to find

11  e-mails and documents that Todd Leany may have exchanged with Perini and/or MGM.  A PCS

12  employee sent Leany an e-mail on June 1, 2009, stating the company would be searching e-mail boxes

13  including his own, and would need certain search terms.  Leany responded to the e-mail acknowledging

14  that his e-mails would be searched, and suggested that the best approach would be for IT to search his

15  e-mail boxes.  Thus, Leany knew of Century's corporate policy regarding use of company computers

16  prior to April 1, 2008, and knew or should have known of PCS' policies after he became its Executive

17  Vice President on April 1, 2008..

18       With respect to Leany's assertion of the accountant-client privilege under NRS 49.135,

19  Plaintiffs argue Steve Fellows, who was the CFO of Century through the closing of the APA, does not

20  qualify as an accountant.  Under NRS 49.135, "an accountant" is defined as a person certified or

21  registered as a public accountant under NRS Chapter 6:28, who holds a live permit.  Fellows is not.

22       Plaintiffs also argue that the spousal privilege set forth in NRS 49.295 is testimonial and does

23  not protect email communications.  Rather, the Nevada Supreme Court has held the spousal privilege

24  does not protect all communications between spouses from discovery; rather, it enables a spouse to

25  refuse to be examined regarding statements made in marital confidence.  Finally, Plaintiffs argue the

26  fraud exception applies and does not preclude discovery of communications made in furtherance of

27  Defendants' fraudulent scheme.

28       Notwithstanding their arguments that Leany has waived all applicable privileges, if they ever

5

1  existed, Plaintiffs believe that the vast majority of documents on Defendants' privileged document log

2  are irrelevant to this case and agreed to return them.

3  **III.    Defendants' Reply (Dkt. #115)**

4        Defendants argue Plaintiffs' evidence of waiver is "extremely suspect" because Mr. Perkins'

5  statement contradicts all of the evidence in this case.  Plaintiffs acknowledge that most of the

6  documents listed on Defendants' privileged document log are privileged and have agreed to return

7  them.  However, Defendants argue there are many documents that are at the heart of this controversy

8  which are and always have been privileged which should be returned, and the court should preclude the

9  Plaintiffs from using them for any purpose.  Defendants also argue Mr. Perkins' affidavit should not be

10  considered as evidence because it is not properly sworn before a notary public and is not an unsworn

11  declaration under 28 U.S.C. § 1746.  It also contains errors and contradicts the admissible evidence in

12  this case.  Specifically, it contains reference to an email sent to all employees containing a November

13  26, 2006 memorandum, but the memo does not appear in Perkins' or Leany's email box.  Additionally,

14  the "affidavit" is contradicted by Leany's sworn testimony concerning Century/PCS internet policy,

15  emails from other PCS employees, and the testimony of Colleen Boretto, a former PCS employee, who

16  was asked to secretly search Leany's email for information about the "gross profit definition in the

17  [APA]."  Her testimony reflects that as late as June 2009, Perkins believed that some of Leany's emails

18  were protected by attorney-client privilege.

19        Plaintiffs do not contest that many of the communications are privileged.  Defendants dispute

20  that any waiver has occurred.  Because the Perkins affidavit is unreliable, there is no other evidence

21  before the court concerning any internet/email policy to contradict Defendants' position that Leany had

22  a reasonable expectation of privacy regarding his computer and emails.  Additionally, the only

23  electronic documents purchased under the APA were documents relating to the Century Entities'

24  business of fabrication and erection of reinforcing steel.  It did not include Leany's personal

25  communications.

26        Defendants maintain Plaintiffs have not shown that the fraud exception applies.  There is no

27  evidence to show that Leany or Fellows were committing or intending to commit any act they knew or

28  reasonably should have known was a crime or fraudulent. Their communications show legitimate

1   actions taken in the ordinary course of business to maximize the Century Defendants' benefits under the

2   APA they were negotiating.  There is nothing in the emails to indicate either Leany or Fellows knew or

3   should have known what they were doing was wrong, and the communications occurred before the

4   APA closed.  Furthermore, there is nothing to show that Leany or Fellows sought legal advice with the

5   intent to carry out a crime or fraud.  Plaintiffs also note that the party invoking the crime/fraud

6   exception cannot use privileged materials to support its request to invoke it.

7        Plaintiffs misconstrue the scope of the spousal privilege in Nevada.  Regardless of whether the

8   privilege applies to the emails themselves, it does apply to any attempts Plaintiffs might make to ask

9   Todd Leany questions regarding the emails at a deposition or at trial.  It would also prevent Plaintiffs

10  from questioning Mrs. Leany about the emails.

11  **IV.     Plaintiffs' Supplement (Dkt. #118)**

12       Plaintiffs submitted a supplemental affidavit of David Perkins that is notarized.  They note the

13  original affidavit attached to the opposition was not notarized because of the expedited briefing

14  schedule coinciding with Mr. Perkins' family vacation.

15  **DISCUSSION**

16       This is a diversity action which asserts state law claims and counterclaims.  Rule 501 of the

17  Federal Rules of Evidence states that, "in civil actions and proceedings, with respect to an element of a

18  claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person,

19  government, State or political subdivision thereof shall be determined in accordance with State law."

20  NRS 49.095 codifies Nevada law on the attorney-client privilege.  The attorney client privilege applies

21  to confidential communications: (1) between a client or his representative and his lawyer or his lawyer's

22  representative; (2) between his lawyer and his lawyer's representative; (3) made for the purpose of

23  facilitating the rendition of professional legal services to the client, by the client or the lawyer to a

24  lawyer representing another in a matter of common interest.

25       A communication is confidential under Nevada law if "it is not intended to be disclosed to third

26  persons other than those to whom disclosure is in furtherance of the rendition of professional legal

27  services to the client or those reasonably necessary for the transmission of the communication.  NRS

28  49.055.  The client is the holder of the attorney-client privilege and may waive the "privilege if he or his

1   predecessor while holder of the privilege voluntarily discloses or consent to the disclosure of any

2   significant part of the matter." NRS 49.385. Under Nevada Law, "[w]hile the attorney may claim the

3   privilege on a client's behalf, only the client has the ability to waive it." *Manley v. State*, 115 NV 114,

4   121 n.1 (NV 1999).

5       NRS 49.185 codifies the accountant and client privilege in Nevada. Communications between a

6   client and his representative and accountant or his accountant's representative, between his accountant

7   and an accountant's representative, made for the purpose of facilitating the rendition of professional

8   accounting services to the client, by the client or his accountant to an accountant representing another in

9   a matter of common interest is privileged. An accountant is defined as a person certified or registered

10  as a public accountant under Chapter 628 of NRS who holds a live permit. NRS 49.135. "A

11  communication is 'confidential' if it is not intended to be disclosed to third persons other than those to

12  whom disclosure is in furtherance of the rendition of professional accounting services to the client or

13  those reasonably necessary for the transmission of the communication." NRS. 49.155. No client and

14  accountant privilege exists "[i]f the services of the accountant were sought or obtained to enable or aid

15  anyone to commit or plan to commit what the client knew or reasonably should have known to be a

16  crime or fraud." NRS 49.205(1).

17      The spousal privilege is codified at 49.295. It is a testimonial privilege which prohibits a

18  husband or wife from being examined as a witness for or against a spouse without the spouse's consent

19  about any communication made by one to the other during marriage. Although the statue uses the

20  phrase "any communication" in the marriage, the Nevada Supreme Court has construed the statute to

21  apply to communications between spouses that are confidential. *Foss v. State*, 547 P.2d 688, 92 NV

22  163.

23      Todd Leany is an owner or part owner of each of the entities named in this lawsuit. Leany

24  Affidavit, Exhibit "G" to Renewed Motion for Protective Order, ¶ 2. Both sides agree that the parties

25  initially entered into a letter of intent preceding the APA, that the APA closed April 1, 2008, and that

26  Leany became and Executive Vice President of PCS on April 1, 2008. After PCS acquired the Century

27  entities' assets, Leany continued to work in the same office and to use the same computer. However, it

28  is undisputed that after the acquisition, the computer belonged to PCS. PCS claims, and Leany does not

8

1   dispute, that after the acquisition, Leany knew PCS had possession of the Century e-mail server and

2   was informed of and consented to a proposed Century-PCS e-mail migration that effectively merged all

3   of Century's pre-acquisition communications into a single PCS server.

4          There is no evidence in the record that Leany did anything, either before or after the APA

5   transaction, to preserve the confidentiality of materials he now claims are privileged.  Leany was

6   initially suspended the last week of October and terminated approximately one week later in  early

7   November, 2009.  His affidavit avers that when he was suspended and terminated, he was not given an

8   opportunity to remove any confidential and privileged information from his computer or his office.

9   Leany Affidavit, ¶ 12.  He also attests that PCS met with him and his counsel and allowed him to take

10  copies of his computer and files, but maintained complete control over everything on his computer and

11  in his personal files.  *Id*.  Significantly, although Leany avers he was represented by counsel at the time,

12  and accompanied by counsel in the meeting with PCS, he does not claim that either he or his counsel

13  asked or demanded an opportunity to remove any confidential or privileged information from his

14  computer or files.  He does not claim that he attempted to segregate or password protect any of the

15  communications he now claims are privileged.  He left over 10,000 documents on his work computer

16  without ever attempting to remove them before PCS acquired the assets of the Century entities,

17  including its computers, or before emails on the Century computers were migrated into the PCS servers.

18         The court found Mr Perkins' affidavit, which was detailed and supported by exhibits,

19  convincing.  Mr. Perkins' affidavit attests that the computer in question was the property of PCS, not

20  Todd Leany.  Perkins Affidavit, Dkt. #118, ¶14.  The e-mails and documents that Leany claims are

21  privileged and improperly in the possession of PCS were maintained on a company server, not on the

22  computer maintained in Todd Leany's office, with the exception of an archive box that would only

23  reside on the PCS computer at Leany's desk.  *Id*.  However, the majority of those e-mails are likely

24  copies of e-mails on the server.  *Id*.  E-mails are maintained on PCS servers and not on the PCS hard

25  drive in Todd Leany's office.  *Id*.

26         Todd Leany spoke with Perkins, while Leany was a principal of Century Steel, and stated he had

27  developed a policy that clarified that all computers were to be used for business, not personal, purposes.

28  *Id*. ¶ 16.  Todd Leany showed Perkins his employee manual which so states.  *Id*.  In fact, Todd Leany

1  recommended that PCS adopt the Century Employment Manual. *Id*.

2  Perkins also attests that PCS had a clear policy in place while Todd Leany was an Executive

3  Vice President. *Id*. ¶ 17.  Perkins was involved in the decision to implement this policy, which was in

4  place during Todd Leany's employment, and available to every employee. *Id*.  Under the PCS policy,

5  any software or files, including mail downloaded via the internet into the company network, become the

6  property of the company. *Id*. ¶ 18.  The e-mails that PCS has produced were on  the PCS servers and

7  spanned the time frame from prior to April 1, 2008, when Todd Leany was a principal of Century Steel,

8  to his last day of work at PCS. *Id*.  Todd Leany had many opportunities to remove the disputed e-mails

9  before they were transferred to the PCS computer network system. *Id*. ¶ 19.  When PCS acquired the

10  assets of Century Steel, it also purchased its computers and computer data among other assets. *Id*.

11  Perkins had personal discussions with Todd Leany regarding PCS' computer and internet policy.

12  *Id*. ¶ 20.  When Perkins met with Todd Leany regarding Century's Employment Manual, he gave him

13  copies of all of PCS' policies, which included PCS' internet usage policy.  Despite his discussion with

14  Perkins, and Perkins receipt of PCS' computer and internet policy, Todd Leany made no effort to

15  remove the e-mails he now claims are private and/or privileged. *Id.*

16  Todd Leany was copied on several e-mails regarding the migration of all e-mails from the

17  Century servers to the PCS servers. *Id*. ¶ 21.  For six months following the acquisition, PCS

18  maintained both the Century Steel and PCS e-mail servers before announcing it was going to conduct a

19  migration of all e-mails on the Century Steel servers onto the PCS servers. *Id*.  Leany knew about the

20  migration, and had an opportunity to remove the e-mails from the system, but did not do so. *Id*.

21  On March 28, 2008, employees of Century Steel were given a PowerPoint presentation

22  regarding the eventual migration of the Century Steel servers with the PCS servers. *Id*. ¶21(a).  On

23  August 27, 2008, an e-mail was sent to all employees regarding the migration of 220 mailboxes

24  representing 250 GB of data on Friday, August 29, 2008, beginning at 7:00 p.m. *Id*.  ¶21(b).  Todd

25  Leany did not remove any e-mails after receiving this notice. *Id*.  On November 5, 2008, an e-mail was

26  sent to all employees still logging onto the Century servers that modification would be made to the IT

27  system such that they would now be logging onto the PCS domain. *Id*. ¶ 21(b).  On November 5, 2008,

28  an e-mail was sent to Todd Leany advising him that PCS was planning on moving the remaining

10

1    Century Steel domain users to the new PCS domain that night.  Again, Leany did not remove any e-
2    mails he believed to be private or privileged at this time.

3        The court finds that Leany waived any privilege he may have had to privileged or confidential
4    materials he left on the Century computer he used by failing to take reasonable means to preserve the
5    confidentiality of the privileged matter.  *See United States v. SDI Future Health, Inc.*, 464 F.Supp 2d
6    1027, 1041 (D. Nev. 2006) (*citing United States v. De la Gara*, 973 F.2d 746, 749 (9th Cir. 1992).  The
7    court finds that Leany simply could not have a reasonable expectation of privacy in e-mails he failed to
8    remove or otherwise protect from disclosure after the acquisition of the Century entities' assets by PCS.
9    Century had a corporate policy allowing the company to monitor the use of its employees' computer or
10   e-mail.  PCS had a corporate policy even more stringent as set forth above.  The e-mails were migrated
11   to PCS' server, and not, as Defendants seem to suggest, maintained only on the computer Leany used in
12   his office.  Both Century and PCS had a written policy that was disseminated to employees.  Finally,
13   Leany was given a copy of the contents of his own hard drive and personal files in his office.  He knew
14   what was on the computer in his office.  He was represented by counsel at the time he met with PCS
15   and was provided with a copy of his computer and office files.  Yet, he did not disclose that there were
16   any confidential or privileged communications on the computer, or demand their return or deletion.
17   Under all of these circumstances, the court finds that Leany has waived any expectation of privacy and
18   privilege he might otherwise have had.

19       For these reasons,

20       **IT IS ORDERED** that Defendants' Renewed Motion for Protective Order and for Return of
21   Privileged Documents (Dkt. #101) is **DENIED**.  However the court will enforce the Plaintiffs'
22   agreement to return the majority of the communications identified on Defendants' privileged document
23   log not relevant to this litigation, and specifically, all of his marital communications and ecclesiastical
24   communications.

25       Dated this 29th day of September, 2011.

27       _____
         Peggy A. Leen
28       United States Magistrate Judge

                                    11