UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PACIFIC COAST STEEL, et al.,            )
                                        )
            Plaintiffs,                 )      2:09-cv-2190-KJD-PAL
                                        )
vs.                                     )
                                        )      **ORDER**
TODD LEE LEANY, et al.                  )
                                        )
            Defendants.                 )
                                        )

     Presently before the Court is the Motion of Defendants Lynn M. Leany and Lynn M. Leany Family Trust for Summary Judgment (#238). Plaintiffs have filed an Opposition (#282) to which Movants replied (#309).

     Also before the Court is the Motion of Defendants Tamara Mae L. Hunt and Tamara Mae L. Hunt Trust for Partial Summary Judgment (#246). Plaintiffs have filed an Opposition (#283) to which Movants replied (#312). These parties are sometimes referred to hereinafter as "Movants".

**I.  BACKGROUND**

     This action arises from the purchase by Plaintiffs' Pacific Coast Steel and San Diego Steel Holdings Group, Inc. in April 2008, of the assets of Century Steel and related entities for $151,500,000. Movant, Tamara M. Hunt, through the Tamara Mae L. Hunt Irrevocable Trust owned approximately 40.5% of Century Steel, Inc. and its related entities ("Century"). Movant, Lynn Leany,

and the Lynn M. Leany Family Trust, held a 1% interest, and Defendant Todd Lee Leany held a 58.5% interest.

The purchase price for the Century entities consisted of $121,500,000 in cash and two promissory notes in the amount of $15,000,000 each as "hold back" to insure that ongoing projects acquired by PCS would reach an agreed upon profitability level of 18%. The two promissory notes consisted of a Pacific Coast Steel note in the amount of $15,000,000 and a San Diego Steel Holdings Group note in the principal sum of $15,000,000. The San Diego Steel Holdings Group note was payable on demand and, as part of the purchase, converted by Todd Leany to stock in San Diego Steel Holdings Group, Inc. The PCS instrument was a term note payable in 3-5 years conditioned on the profitability of work in progress purchased by Plaintiffs from Century as part of the acquisition. From the PCS Note, $12,150,000 was assigned to Tamara Hunt as Trustee of the Tamara Mae L. Hunt Irrevocable Trust. Todd Leany was assigned $2,550,000 and Lynn Leany was assigned $300,000.

Pursuant to the Asset Purchase Agreement ("APA") Century was required to deliver to PCS a Work-In-Progress Report showing current projects as of the time of closing. Within fifteen days of the due date of the note, PCS was to deliver to Century, a written statement showing the actual cost on each project to determine whether the projects had met the profitability rate of 18%. If there was a profit shortfall, the Century entities would be required to repay PCS all or a portion of the $30,000,000 represented by the promissory notes.

The Asset Purchase Agreement required that the Century owners, including Movants, personally guaranty contractual obligations of the Sellers under the Asset Purchase Agreement.

10.16 of the APA provided, in part, as follows:

> Guaranty. Each owner hereby agrees, jointly and severally, to absolutely, irrevocably and unconditionally guarantee the payment and performance of all obligations of the Sellers under this Agreement and each of the Transaction Documents to the Purchasers and their Affiliates, successors and assigns under this Agreement and the Transaction Documents (The "guaranteed obligations"). Each Owner

> acknowledges and agrees that this guaranty is a continuing and unconditional guaranty of payment and performance and not of collection. In the event any Sellers at any time fail to pay or perform any of the guaranteed obligations as and when the same become due, in accordance with all applicable terms and conditions, each Owner agrees to pay such debt or perform such obligation immediately. Each Purchaser, may in its discretion, enforce the collection of such debt or the performance of such obligation against owner by action in court of competent jurisdiction, or in any other manner provided by law, the same as if such debt or obligation were the primary and individual debt or obligation of such owner, and without first seeking to enforce such debt or obligation by action or otherwise against any Seller, or, each Purchaser may, in their discretion, proceed in any manner provided by law or by contract for collection of debts or the performance of obligations against either or any of the Owners and the Sellers the same as if debts and obligations were primarily and individually the debt of both each Owner and each Seller, jointly and severally . . . .

Section 10.16 of the APA also expressly provides, in pertinent part, as follows:

> This guaranty is an absolute, unconditional and continuing guaranty. Each owner hereby irrevocably:
>
> (a) Consents to all terms, covenants, conditions and agreements heretofore or hereafter made by any Seller with any Purchaser.
>
> (b) Consents that each Purchaser may, without discharging any Owner or in any way affecting the obligations of any Owner under this Agreement or the Transaction Documents, without notice to or further consent from any Owner . . .(iii) renew, extend or modify the terms of any of the Guaranteed Obligations or any other instrument or agreement evidencing the same . . .;
>
> (c) Waives all notices whatsoever with respect to this Agreement, the Transaction Documents or with respect to the Guaranteed Obligations, including, without limitation, notice of . . . (ii) the existence, creation or incurring of any of the Guaranteed Obligations or the terms or amounts thereof or any changes therein . . .;
>
> . . .
>
> (h) Agrees that the liability of such Owner under this Agreement and the Transaction Documents shall not be affected or impaired by, and this Agreement or any Transaction Document shall remain fully enforceable against such Owner for the full amount of or performance of the Guaranteed Obligations less only payments thereon actually received and retained by the Purchasers irrespective of and without reduction on account of (I) any defense, offset or counterclaim which any Seller may have or assert with respect to any of the Guaranteed Obligations, including, without limitation, . . . failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud misrepresentation . . .

The Asset Purchase Agreement contained a Profit Shortfall Provision which provided an adjustment of the purchase price in the event Sellers' projections regarding the profitability of the work in progress, as of the date of the closing, proved wrong. In the Spring of 2009, the President and Chief Executive Officer of PCS, warned Todd Leany that it appeared there would be a significant profit shortfall. Thereafter, a disagreement arose regarding how to calculate the profit shortfall figure, which resulted in the negotiation of what became known as the "Second Codicil". The Second Codicil specified which cost elements should be included in the profit calculation, with all other provisions of the Asset Purchase Agreement to remain in full force and effect. Todd Leany and Lynn Leany signed the Second Codicil. Movant Lynn Leany asserts that he was signing the Second Codicil only in his capacity as an owner and not as a guarantor. Movant Tamara L. Hunt asserts that she was unaware of the Second Codicil and did not agree to its terms. According to Plaintiffs, Todd Leany had full authority on behalf of the other owners, through corporate resolutions, to enter into the Second Codicil and all ancillary agreements related to the Asset Purchase Agreement. In response to Movant's assertion that she was not aware of or did not consent to the Second Codicil, Plaintiffs' point to minutes of the annual meeting of board of directors and stockholders of Century, executed by Movants and the other owners, resolving that "all actions of every kind taken by the officers of the corporation pursuant to any such resolution, action, decision or authorization be, and the same are hereby authorized, adopted, approved, ratified and confirmed." The Second Codicil was drafted and negotiated by Bud Stoddard, Esq., an attorney representing the owner/sellers in connection with the sale.

## II. POSITION OF THE PARTIES

Movant Hunt asserts that the Second Codicil, executed without her knowledge or consent, materially increases liability under the Guaranty, thus discharging Movant guarantors from their obligations. Movant Lynn Leany concurs. Plaintiffs' position is that Todd Leany had full authority to negotiate and execute the Second Codicil without further input or participation from the other

owners and that the document is a "clarification" not a "modification" of the mechanics of a necessary calculation.

### III.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

1   Summary judgment shall be entered "against a party who fails to make a showing sufficient
2 to establish the existence of an element essential to that party's case, and on which that party will
3 bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted
4 if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

**IV.  ANALYSIS**

For purposes of this Summary Judgment Motion, the Court finds that Movants are not entitled to judgment as a matter of law that they are released of their obligations under the Guaranty. Both movants expressly consented to future agreements made by any Seller (§10:16(a)) with respect to the guarantee. (Emphasis added.) However, even if Movants are correct that the Second Codicil effected a material modification to their guaranteed obligations, and even if they had not consented to such material modifications, their obligations are discharged only to the extent of the increased loss caused by the modification. Restatement (Third) Surety and Guaranty, §41, comment (d). Movants argue (1) that Delaware has not "specifically adopted" the subject Restatement comment and (2) that the Idaho case of Gebrueder Heidemann, K. G. v. A.M.R. Corp., 746 P.2d 579, 584 (Idaho App. 1987), is distinguishable because it involved a compensated guarantor.

It is undisputed that the subject personal guaranties were required of Movants as a condition of Plaintiffs' asset purchase.  Movants, having sold their interests for $151,500,000, cannot be heard to say they received no consideration for their guaranty.  That the Courts of Delaware have not yet had occasion to address the specific Restatement comment is not determinative of how this matter may be resolved.

Accordingly, at a minimum, Movants would still be liable for the guaranteed amount less the extent of the increased obligation, if any, attributed to the Second Codicil.  Moreover, there are genuine issues of material fact as to whether the Second Codicil altered or only clarified the profitability determination for works in progress.  Having failed to timely plead the affirmative defense of novation, it has been waived by Movants.

## V. CONCLUSION

Defendants' Motions for Summary Judgment (#238) and Partial Summary Judgment (#246) are **DENIED**.

DATED: March 27, 2012.

_____
Kent J. Dawson
United States District Judge