1
2
3          **UNITED STATES DISTRICT COURT**
4              **DISTRICT OF NEVADA**
5
6
7
8    PACIFIC COAST STEEL, et al.,          )
                                            )
9              Plaintiffs,                  )        2:09-cv-2190-KJD-PAL
                                            )
10   vs.                                    )
                                            )
11   TODD LEE LEANY, et al.                 )        **ORDER**
                                            )
12             Defendants.                  )
                                            )
13   _____     )
14
15          Presently before the Court is Defendants' Motion for Partial Summary Judgment on
16   Plaintiffs' Tort Claims (the "Tort Motion") (#233).  Plaintiffs have filed an Opposition (#284) to
17   which Defendants replied (#308).
18          Also before the Court is Defendants' Motion for Partial Summary Judgment on Damages (the
19   "Damages Motion") (#234).  Plaintiffs have filed an Opposition (#285) to which Defendants replied
20   (#300).
21          Also before the Court is Defendants' Motion for Partial Summary Judgment on Plaintiffs'
22   Contract Claims (the "Contract Motion") (#235).  Plaintiffs have filed an opposition (#288) to which
23   Defendants replied (#302).
24          Also before the Court is Defendants' Motion for Partial Summary Judgment on Plaintiffs'
25   Eighth, Ninth and Rescission Claims (the "Rescission Motion") (#236).  Plaintiffs filed an
26   opposition (#286) to which Defendants replied (#307).
27
28

1    Also before the Court is Plaintiffs' First Motion for Partial Summary Judgment on Plaintiffs'

2  Thirteenth Claim for Relief (#247).  Defendants filed an Opposition (#268), to which Plaintiffs

3  replied (#301).

4    Also before the Court is Plaintiffs' Second Motion for Partial Summary Judgment (#248).

5  Defendants filed an Opposition (#264) to which Plaintiffs replied (#303).

6    Also before the Court is Plaintiffs'/Third Party Defendants' Third Motion for Partial

7  Summary Judgment (#249).  Defendants/Counterclaimants filed an Opposition (#265) to which

8  Plaintiffs/Third Party Defendants replied (#304).

9    Also before the Court is Third Party Defendants' Fourth Motion for Partial Summary

10  Judgment (#250).  Third Party Plaintiffs filed an Opposition (#266) to which Third Party Defendants

11  replied (#305).

12    Also before the Court is Plaintiffs' Motion to Enforce Alternative Dispute Resolution

13  Provisions or Leave to Supplement (#296).  Defendants have filed an opposition (#313) to which

14  Plaintiffs replied (#323).

15    The Court considers and rules upon the foregoing motions together herein.

16                                    **BACKGROUND**

17    This action arises from Pacific Coast Steel (PCS) and San Diego Steel Holdings Group, Inc.

18  April 2008 purchase of the assets of Century Steel and related entities for $151,500,000.  Sellers,

19  Tamara M. Hunt, through the Tamara Mae L. Hunt Irrevocable Trust, held a 40.5% interest, Lynn

20  Leany, through the Lynn M. Leany Family Trust, held a 1% interest, and Todd Lee Leany, through

21  the Todd Lee Leany Irrevocable Trust, held a 58.5% interest in the Century entities.

22    The purchase price for the Century entities consisted of $121,500,000 in cash and two

23  promissory notes in the amount of $15,000,000 each as "hold back" to insure that ongoing projects

24  acquired by PCS would reach an agreed upon profitability level.  The two promissory notes consisted

25  of a Pacific Coast Steel note in the amount of $15,000,000 and a San Diego Steel Holdings Group

26  note in the principal sum of $15,000,000.  The San Diego Steel Holdings Group note was payable on

27  demand and, as part of the purchase, converted by Todd Leany to stock in San Diego Steel Holdings

28

2

1   Group, Inc. The PCS instrument was a term note conditioned on the profitability of work in progress

2   purchased by Plaintiffs from Century as part of the acquisition.  From the PCS Note, $12,150,000

3   was assigned to Tamara Hunt as Trustee of the Tamara Mae L. Hunt Irrevocable Trust. Todd Leany

4   was assigned $2,550,000 and Lynn Leany was assigned $300,000.

5       The Asset Purchase Agreement provided that on the day of closing, Plaintiffs would receive

6   net working capital of at least $59,679,400.  PCS actually received $60,666,908 in net working

7   capital, or $987,508 more than required by the express terms of the contract. It is alleged, however,

8   that Defendants manipulated the net working capital through various mechanisms, including

9   shareholder distributions, bonuses, adjustments to notes receivable and pay down of accounts to

10  deprive Plaintiffs of the benefit of their bargain.

11      Plaintiffs assert that they paid an acquisition premium of $95,000,000 over and above the

12  value of the Century entities' assets and that this premium was based upon the Century entities'

13  customer relations and Todd Leany's agreement to become an employee and officer in PCS.

14      Pursuant to the Asset Purchase Agreement, Century was required to deliver to PCS a Work-

15  In-Progress Report showing current projects as of the time of closing.  Within fifteen days of the due

16  date of the PCS note, PCS was to deliver to Century, a written statement showing the actual cost on

17  each project to determine whether the projects had met the agreed upon profitability level.  If there

18  was a profit shortfall, the Century entities would be required to repay the deficiency or offset against

19  any amounts outstanding under the PCS note.

20      The Asset Purchase Agreement required that the Century owners, including Defendants

21  Tamara Hunt, Lynn Leany and Todd Leany, personally guaranty certain contractual obligations of

22  the Sellers under the Asset Purchase Agreement.  That Agreement also contained certain

23  representations and warranties concerning current and former directors, officers and employees of

24  the Century entities.  Specifically, Section 4.25 of the Asset Purchase Agreement provided:

25          Related Party Transactions.    Except as set forth in Schedule 4.25, no current
            or former directors, officers or employees of any Century Entity nor any
26          affiliate of any Century Entity, (a) has or during the last three fiscal years has
            had any direct or indirect interest (i) in, or is or during the last three fiscal
27          years was a director, officer, or employee of any Person that is a client

28                                                3

customer, supplier, lessor , lessee, debtor, creditor or competitor of any
Century Entity, or (ii) in any property, asset or right that is owned or used by
any Century Entity in the conduct of their business, or (b) is or during the last
three fiscal years has been a party to any agreement or transaction with any
Century Entity, excluding stock option and/or purchase agreements.

At the time the parties closed the asset purchase transaction, Plaintiffs and Todd Leany

entered into an Employment Agreement whereby PCS agreed to employ Todd Leany as Executive

Vice-President of PCS for a five-year term ending March 31, 2013, unless the agreement was sooner

terminated. The Agreement provided a five year term of employment, compensation, benefits,

confidentiality of trade secrets and other confidential information, a non-competition covenant, and

termination.

Following closing of the Asset Purchase Agreement on April 1, 2008, Todd Leany proceeded

to work for PCS as Executive Vice President of the company.

In June of 2009, the parties commenced discussions concerning a potential profit shortfall.

These discussions culminated in the negotiation of a "Second Codicil".  Plaintiffs assert that the

Second Codicil clarified the method for calculating the profitability rate of 18%.  Defendants assert

that it completely altered the profitability determination.  The document was negotiated by

Defendants' attorney, Bud Stoddard, Esq., and signed by Todd Leany and Lynn Leany as officers of

the Century entities on July 16, 2009.  The Second Codicil was also signed by representatives of

Plaintiffs, however, Tamara Hunt did not sign the document.

In late October, 2009, PCS learned that Todd Leany might have an interest in a competing

company, Diversified Construction Supply, LLC ("DCS"). When questioned, Leany admitted that he

had an interest in DCS, but denied that the company was in the business of selling rebar and/or

fabricating rebar. Leany was suspended and an investigation was commenced . Subsequently, on

November 6, 2009, Leany's employment with PSC was terminated.  It was later determined that

Leany also had an interest in another company, Sierra Reinforcing (Sierra), formed in 2006.

This action was commenced on November 16, 2009.  Plaintiffs asserted claims for

declaratory relief, injunction, tort, breach of contract and rescission.

4

On November 17, 2009, Defendants' attorney, Bud Stoddard, met with representatives of Plaintiff to go through Todd Leany's office for the purpose of identifying and returning his personal belongings.  Defendants' attorney left the meeting after a few hours with several bankers' boxes. Subsequently, Plaintiffs obtained from the computer used by Mr. Leany, various documents and information which have become the basis for counterclaims by Defendants asserting intrusion, invasion of privacy, conversion, and unlawful access to computers.

Defendants have filed Counterclaims and Third Party Claims alleging causes of action for breach of contract, tort, duress, and accounting. The tort claims include fraud, libel/slander, and a property damage claim wherein  Defendants allege that Plaintiffs caused or permitted hazardous substances to be discharged upon and into the soil of a leased property commonly known as the "Boulder City Yard".

## POSITIONS OF THE PARTIES

It is clear that much of this case centers around the alleged hidden interests of Defendant Todd Leany in other companies, and Plaintiffs' view of the significance of those interests. Defendants argue that the alleged conflicts were insignificant and that Plaintiffs are simply using those as an excuse for termination of Todd Leany's employment and to create claims of damages and rescission after the collapse of the construction industry in Las Vegas, Nevada. Plaintiffs respond that their reliance on Todd Leany's honesty and trustworthiness was the motivating factor in their decision to pay sellers ninety five million dollars in excess of the value of tangible assets.

Another major dispute is Defendants' alleged manipulation of "Net Working Capital", outside the "ordinary course of business", to convert assets to cash which was to be excluded from the transfer of assets and, accordingly, retained by sellers.

The issue of lost profits is also a major area of contention in this litigation. This controversy was further complicated by negotiation of the "Second Codicil" the validity of which is also disputed.

In response to the termination of his employment with PCS, Leany denies that DCS or Sierra was a competitor of PCS.  He admits, however, that he did not disclose to PCS his involvement in

5

either company. He asserts that the Non-competition Agreement and the Employment Agreement defined the relevant restricted business as "each Sellers, Trism's and CT&T's business of reinforcing steel fabrication <u>and</u> erection" (Emphasis added).  Leany argues that neither DCS or Sierra did both. "Strictly construed, the plain meaning of 'restricted business' would only include companies that both fabricate <u>and</u> erect reinforcing steel, not one or the other." (Emphasis added) (Defendants' Motion for Partial Summary Judgment on Plaintiffs' Contract Claims, #235, p. 27).  PCS points to evidence that both DCS and Sierra were advertising and/or actually engaged in both the business of fabrication and erection.

Relative to the issue of Net Working Capital, as indicated above, Plaintiffs assert Defendants manipulated net working capital through various mechanisms which were not in the ordinary course of business.  Defendants assert that all actions taken were in the ordinary course of business and that Plaintiffs received more than the amount of net working capital they had bargained for.

Plaintiffs claim lost profits from sales by Leany to companies in which he had an interest. Defendants deny there were any lost profits.

Plaintiffs request rescission based upon fraudulent inducement and fraudulent concealment of Leany's other interests, asserting that they would have never entered into the agreement had they known of Leany's conflicts of interest and involvement with other companies.  Defendants assert that rescission is not practicable and that Plaintiffs have an adequate remedy at law in the form of a damages award and that in all events, Plaintiffs, by continuing to perform under the contract, have waived any right of rescission.

Plaintiffs are requesting partial summary judgment on the propriety of Leany's termination. Defendants assert that Leany's termination was pretextual, that there were no damages caused by Leany's apparent conflicts and that, to the contrary, his actions actually benefitted Plaintiffs.

Plaintiffs also request partial summary judgment on Defendant's Twenty-Fourth Affirmative Defense (Duress) and Counterclaim seeking rescission of the Second Codicil.

Plaintiffs request judgment on Defendants/Counterclaimants' Counterclaim Eleven for pollution of the Boulder City Yard and on Counterclaims Twelve through Fifteen which assert

intrusion or invasion of privacy, conversion and unlawful access to computers, in connection with items contained in the offices occupied by Todd Leany at PCS.  Plaintiffs assert Defendants lack standing on Counterclaim Eleven. Defendants respond they have obtained an assignment, thus satisfying the requirement for standing in connection with the pollution claim.  As to Counterclaims Twelve through Fifteen, Plaintiffs assert their purchase of all assets of the Century entities and the integration of Leany's computer into the company network defeat any claims based upon their entry to Leany's office or search of the  computer located therein. Defendants respond that Leany retained privacy rights notwithstanding the acquisition of his computer by Plaintiffs and his employment at that company.

Plaintiffs have requested partial summary judgment on Defendants' Counterclaim Six against Benson and Perkins for breach of implied covenant of good faith and fair dealing and Defendants Counterclaim Ten for defamation/slander.  Defendants concede summary judgment on Defendants' Sixth Counterclaim, Breach of Covenant of Good Faith and Fair Dealing of the Asset Purchase Agreement, as to Benson and Perkins only.  However, Defendants do not concede that claim against PCS.

Defendants' defamation claim centers around two statements: (1) an alleged discussion between Eric Benson, President of PCS, and Glenn Gross wherein Benson allegedly told Gross that Leany had committed acts of dishonesty in his employment; and (2) statements made by PCS employees to other PCS employees that Leany was stealing rebar or scrap from PCS.  Plaintiffs argue that Gross denied knowledge of any defamatory statements made by Benson.  Plaintiffs assert that those who heard the statements regarding stealing rebar or scrap understood "stealing" to mean that Leany was selling PCS steel or rebar to companies in which he had an ownership interest.

The Asset Purchase Agreement, Profit Shortfall Provisions, Paragraphs 2.4(b) and (c), included a process for alternate dispute resolution consistent with that to be employed in case of disagreement as to any amount included in or omitted from the Closing Net Capital Statement.  The procedure is set out in Section 2.3(d) of the Asset Purchase Agreement and provides for submittal of

1  the amounts in dispute to KPMG (the "Accountants") for final and binding determination.  Plaintiffs

2  request arbitration and Defendants oppose.

3  <div align="center">**STANDARD FOR SUMMARY JUDGMENT**</div>

4        Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

5  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

6  material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

7  P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

8  initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at

9  323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

10  genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

11  587 (1986).

12        All justifiable inferences must be viewed in the light must favorable to the nonmoving party.

13  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere

14  allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

15  or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.

16  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

17  issues of controversy in favor of the non-moving party where the facts specifically averred by that

18  party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497

19  U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

20  (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

21  issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere

22  speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th

23  Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine

24  issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d

25  1054, 1061 (9th Cir. 2002).

26        Summary judgment shall be entered "against a party who fails to make a showing sufficient

27  to establish the existence of an element essential to that party's case, and on which that party will

28  <div align="center">8</div>

1  bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.  Summary judgment shall not be granted

2  if a reasonable jury could return a verdict for the nonmoving party.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

3  <div align="center">**DEFENDANTS' "TORT MOTION"**</div>

4      Defendants, in their Tort Motion (#233), request partial summary judgment on Plaintiffs' tort

5  claims for relief, including the Fourth (Tortious and Contractual Breach of the Covenant of Good

6  Faith and Fair Dealing), Fifth (Misappropriation of Trade Secrets), Sixth (Breach of Fiduciary Duty),

7  Seventh (Breach of Loyalty) and Tenth (Negligence). Plaintiffs have conceded that the Fourth Claim

8  is contractual only, and agree to withdraw their Tenth Claim, negligence.

9  <div align="center">**ANALYSIS**</div>

10      Defendants assert that Plaintiffs' tort claims are all based on allegations directly linked to

11  specific provisions of the APA or other ancillary agreements.  It is asserted that the tortious breach of

12  the Covenant of Good Faith and Fair Dealing is severely limited to certain special relationships

13  where a superior and trusted party takes advantage of a weaker, subservient party.  <u>See</u> <u>Terracon</u>

14  <u>Consultants Western, Inc. v. Mandalay Resort Group</u>, 206 P.3d 81, 89 (Nev. 2009).  Defendants

15  argue that even intentional torts committed during the performance of the contract arise from the

16  contractual duties and not tortious duties, unless the parties can identify an independent duty that

17  does not arise from the contract.  Parsing the language of the agreements, Defendants argue that even

18  if Leany was conflicted in his dealings as an officer of PCS with his own companies, he did not

19  violate the express provisions of the contracts.  Defendants assert that Leany's companies were not

20  restricted businesses within the meaning of the agreements because they were not involved in both

21  fabrication and erection of steel.

22      Regardless of whether the agreements are interpreted as including, as "restricted businesses",

23  only competitors who are involved in both fabrication <u>and</u> erection, it is clear that Todd Leany was

24  involved in numerous transactions during the course of his employment with PCS which pitted his

25  duties and responsibilities as an officer of PCS against his duties and responsibilities to DCS and

26  Sierra.  He became involved in discussions regarding prices and terms of payment for purchases and

27  other transactions between his employer and the companies in which he held undisclosed interests.

28

<div align="center">9</div>

1    He had access to costs, pricing and other confidential information.  Defendants, citing <u>France v.</u>

2    <u>Johnson</u>, 999 P.2d 351, 358 (Nev. 2000), acknowledge that the determination of whether corporate

3    information such as customer and pricing information is a trade secret, is a question for the finder of

4    fact.  Plaintiffs have adduced evidence that Leany surreptitiously shared estimates and bid lists with

5    Tom Prince of Sierra Reinforcing.  While Leany suggested it might be a good idea to obtain personal

6    guarantees from Sierra owners, he did not insist on it and allegedly recommended against

7    preliminary lien notices on Sierra projects, all without disclosing his interest in that company.  He

8    also discussed the acquisition of Sierra and the purchase of assets and liabilities of Sierra,

9    recommending that Prince be hired as a PCS salesman, all without disclosure of his interests in that

10   company.  Similarly, it is alleged that Leany used his influences as an officer and employee of PCS

11   for the benefits of his secret interests in Diversified Construction Supply. Plaintiffs have adduced

12   sufficient evidence that  a reasonable jury could conclude that he shared that information with Prince

13   and others.

14       Any claim for misappropriation of trade secrets arises under the contracts. However, the

15   breach of fiduciary duty and loyalty claims do not arise solely from the contracts, and are more

16   expansive than the written agreements due to the position of Leany as an officer of PCS.

17       The economic loss rule does not bar recovery in tort where the defendant had a duty imposed

18   by law rather than by contract and where the defendant's intentional breach of that duty causes

19   purely monetary harm to the plaintiff. <u>Giles v. Gen. Motors Acceptance Corp</u>., 494 F.3d 865 (9th

20   Cir. 2007).  Both Nevada and Delaware law recognize independent fiduciary duties of loyalty owed

21   by employees of a corporation that arise separate and apart from contractual obligations.  <u>Leavitt v.</u>

22   <u>Leisure Sports Inc.</u>, 734 P.2d 1221, 1224 (1987); <u>Metlife Bank, N.A. v. Evergreen Moneysource</u>

23   <u>Mortg.</u>, Case No. 2:10-cv-00288-RLH-PAL, 2010 WL 2531729, *2 (D.Nev. 2010); <u>Gantler v.</u>

24   <u>Stephens</u>, 965 A.2d 695, 708-709 (Del. 2009).

25       Therefore, the Court denies the motion for summary judgment on these claims.

26   ///

27   ///

28                                   10

**DEFENDANTS' "DAMAGES MOTION"**

Defendants, in their "Damages Motion" (#234), seek partial summary judgment on Plaintiffs' claims for loss of good will, loss of profits due to Todd Leany's involvement in sales to Sierra Reinforcing and Diversified Construction Supply, and losses based on Leany's involvement in the sale of PCS inventory to Diversified Construction Supply.

**ANALYSIS**

The value attributed to goodwill ranges from $79,000,000 as mentioned in the letter of intent to purchase, and the $95,000,000 now claimed by Plaintiffs. Goodwill is actually more properly referred to as an acquisition premium, meaning the amount paid in excess of the net value of tangible assets transferred as part of the purchase price. Plaintiffs will testify that they paid the acquisition premium based upon Todd Leany's representation that he had unparalleled customer relations and his assurance that he had no competing interests. That Plaintiffs have not yet chosen to recognize the loss of good will on their corporate financial statements is not determinative of whether there has in fact been a loss. Whether goodwill was impaired by the actions of Leany and the amount of any damage therefrom are issues for the finder of fact.

Likewise, any loss of profits due to Sierra Reinforcing and Diversified Construction Supply purchases, including Pacific Coast Steel's inventory, are factually disputed and must be resolved by the finder of fact. Plaintiffs have introduced evidence that PCS sold steel to Sierra and DCS at a significantly lower profit margin than was given to other customers, and that Todd Leany actually participated in establishing pricing. PCS expert witness Bergmark has opined that of the Sierra contracts with PCS formed after April 1, 2008, PCS enjoyed an 11.97% negative gross profit margin compared to an average gross profit margin on other contracts entered into during that time period of a positive 22% . That the amount of losses cannot be determined with mathematical precision because the property has been disposed of, or circumstances have changed, is not dispositive as a matter of law. Absolute precision is not required. Ivize of Milwaukee, LLC, 2009 Del. Ch. LEXIS 55, *34. Therefore, the Court denies Defendants' Damages Motion.

**DEFENDANTS' "CONTRACT MOTION"**

Defendants, in their "Contract Motion" (#235), seek partial summary judgment on Plaintiff's contract claims for breach of the Asset Purchase Agreement, the Non-Competition Agreement and the Employment Agreement.  Defendants repeat their argument that the Second Codicil is unenforceable and request the Court to find as a matter of law that Plaintiffs have no viable claims for violation of the net working capital provisions of the Asset Purchase Agreement, that there is no basis for termination of the Employment Agreement for cause, and that Leany did not violate the Noncompetition Agreement.

**ANALYSIS**

Whether Todd Leany violated the non-competition clause of the APA and the Employment Agreement provisions depends upon the intent of the parties as to the meaning of "restricted business".  Defendant argues that it would only include companies that both fabricate and erect reinforcing steel, not one or the other.  Plaintiffs, on the other hand, assert that they have evidence that both companies in which Leany was secretly involved engaged in both activities and that, in any event, Defendants' reading of the restriction is not consistent with the implied covenants of good faith and fair dealing of the agreements.  Accordingly, it cannot be said as a matter of law that Defendants have no liability exposure on these claims.

Whether Defendants' manipulation of net working capital, cash distributions, bonuses, discounts and loans for the purpose of liquidating accounts receivable would constitute violation of the APA hinges on a determination of whether such actions were in the "ordinary course of business".  The parties and their witnesses disagree on this material issue of fact. Accordingly, it is a jury question. Bercutt v. Park, Benziger & Co., 150 F. 2d 731 ( 9th Cir. 1945); Egghead.Com. Inc, v. Brookhaven Capital Mgmt. Co. Ltd, 340 F.3d 79 (2nd Cir. 2003); Jackson v. King, 223 F.2d 714 (5th Cir. 1955).

The parties dispute whether the Second Codicil "changed" the method for calculating any profit shortfall on works in progress, or merely "clarified" the method.  Because the Court has determined the document to be a valid and binding agreement, it makes no difference.  The Second

1    Codicil was signed by Todd Leany after he and counsel for the owners negotiated with PCS. He did

2    not have to agree. The circumstances and stated reasoning for his agreement do not constitute duress.

3    There is also adequate basis for a determination that he had authority to bind the Century entities and

4    owners.  The Court has so ruled (#371) in response to earlier motions.  Because material issues of

5    fact remain as to the other issues raised in Defendants' "Contract Motion", partial summary

6    judgment is denied.

7                          **DEFENDANTS' "RESCISSION MOTION"**

8            Defendants, in their "Rescission Motion" (#236) seek partial summary judgment on

9    Plaintiffs' claims of fraudulent inducement, fraudulent concealment, and rescission.  Defendants

10   assert that the "economic loss doctrine" prevents Plaintiffs from recovering on the inducement and

11   concealment claims which are covered by the existing contracts.  Plaintiffs respond that Defendants

12   owed Plaintiffs independent duties of care arising from Todd Leany's fiduciary obligation to PCS.

13   Defendants also assert that rescission is improper because the parties cannot be restored to their pre-

14   contractual positions.

15                                    **ANALYSIS**

16           As previously stated, the Court agrees that Todd Leany had duties of care arising from his

17   position with and obligations to PCS that are independent of the written agreements.  Such

18   independent duties would be an exception to the economic loss doctrine.  For example, even if

19   Leany's interpretation of "restrictive business" is correct, he would still have duties above and

20   beyond the express provisions of the written contracts. Among those duties would be the duty to

21   refrain from negotiating or participating in transactions, as an officer of PCS, with companies in

22   which he held conflicting and undisclosed interests.  Plaintiffs have adduced evidence of Leany's

23   involvement in such transactions.  Defendants assert his actions were for the benefit of PCS and

24   adverse to his own undisclosed interests in the other businesses.  Accordingly, material issues of fact

25   remain and Defendants' Motion for Partial Summary Judgment on the Eighth and Ninth Claims for

26   Relief is denied.

27

28                                          13

1    The Court, however, agrees with Defendants that rescission is not an appropriate remedy in

2  this action.  Plaintiffs have not met their burden to show that there is not an adequate remedy at law.

3  Venegas-Hernandez v. Asociacion De Compositores, 424 F.3d 50 (1st Cir. 2005). The Court cannot

4  restore the parties to their original positions. G.K. Las Vegas Ltd. Partnership v. Simon Property

5  Group, Inc., 2008 WL 5083700, at *4 (D. Nev. Nov. 25, 2008). Accordingly the Court grants

6  Defendants' Motion for Partial Summary Judgment on the claim for rescission.

7                              **PLAINTIFFS' TERMINATION CLAIM**

8    Plaintiffs, in their First Motion for Partial Summary Judgment, the "Termination Claim"

9  (#247), seek judgment that Plaintiffs properly terminated Todd Leany's Employment Agreement for

10  "cause".  Defendants assert that the termination of Leany was unnecessary and nothing more than an

11  example of "buyer's remorse" and attempt to recoup moneys from a poorly timed purchase.

12                                      **ANALYSIS**

13    It is undisputed that Todd Leany owned interests in companies involved in some of the same

14  business activities as PCS.  It is undisputed that he did not disclose his interests in those companies

15  prior to the termination of his employment.  It is also undisputed that he had some involvement in

16  transactions between his employer and the companies in which he held an interest and that the

17  transactions involved significant dollar amounts and inherent conflicts of interest.  The Court has

18  previously found that Leany had duties to PCS that exceeded the narrowly construed terms of the

19  Asset Purchase Agreement and his Employment Agreement.  His breach of the representation and

20  warranty provisions of the APA and his attempt to conceal his involvement in Sierra Reinforcing and

21  Diversified Construction Supply clearly warranted termination of his employment for cause.  See

22  Southwest Gas Corporation v. Vargas, 111 Nev. 1064 (1978).  Defendants argue, in effect, that

23  Plaintiffs could not terminate Mr. Leany because in so doing, they would save money, rendering the

24  "for cause termination" pretextual.  If that were the law, all terminations, no matter how strong the

25  grounds, would be pretextual.  Therefore, the Court grants Plaintiffs' first motion for partial

26

27

28                                          14

1    summary judgment on the narrow issue of whether Plaintiffs had cause for terminating the

2    Employment Agreement.[1]

3                    **PLAINTIFFS' CODICIL AND AFFIRMATIVE DEFENSE MOTION**

4          Plaintiffs, in their Second Motion for Partial Summary Judgment regarding Defendants'

5    Twenty Fourth Affirmative Defense (Duress) and Counterclaim for rescission of the Second Codicil

6    (#248), seek a ruling that the Second Codicil is valid and binding on Century Entities and owners.

7                                              **ANALYSIS**

8          In an earlier order (#371), the  Court determined that the Second Codicil was not signed

9    under circumstances constituting "duress".  Todd Leany and Lynn Leany signed on behalf of their

10   businesses, had assistance of legal counsel throughout the process and did not have to agree.  The

11   Court found adequate basis for a determination that Todd Leany had authority to bind all Century

12   entities and owners.  Accordingly, the Court finds that the Second Codicil is valid and binding on the

13   parties and grants summary judgment on Defendants' Twenty-Fourth Affirmative Defense (Duress)

14   and on Defendants' Counterclaim seeking rescission of the Second Codicil.

15                 **PLAINTIFFS' MOTION ON POLLUTION AND INVASION OF PRIVACY CLAIMS**

16         Plaintiffs and Third Party Defendants, in their Third Motion for Partial Summary Judgment

17   (#249), seek judgment on Defendants' Counterclaims Eleven through Fifteen.  These counterclaims

18   deal with pollution of the "Boulder City Yard" and the search of Todd Leany's office at PCS.

19                                              **ANALYSIS**

20         Plaintiffs assert that a non-party entity owns the "Boulder City Yard" where pollution was

21   allegedly found following Plaintiffs' occupancy and use.  Defendants admit that an interest in the

22   property was first assigned to the Century Properties following commencement of this litigation.

23   Defendants' assignment does not create retroactive standing.  See Lujan v. Defenders of Wildlife,

24   504 U.S. 555, 571 n.4. (1992) (quoting Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830

25

26         [1] This ruling will not, however, preclude Defendants from asserting their affirmative defenses which include proximate cause
     and failure to mitigate damages. There remain factual issues such as the availability of alternative courses of action, and whether Plaintiffs
27   viewed the Leany conflicts as problem or opportunity.

28                                                 15

1  (1989)).  Moreover, there is scant evidence concerning the extent of pollution or damages.

2  Accordingly, summary judgment is granted on the pollution claim.

3      With respect to the claims for invasion of privacy, conversion and unlawful access to

4  computers, this Court has previously affirmed the order of Magistrate Judge Leen (#370) finding that

5  the asserted privileges had been waived, that the computers and all information contained thereon

6  had been acquired by Plaintiffs as part of an asset purchase agreement and that Leany could have had

7  no expectation of privacy in e-mails where he was allegedly working at cross-purposes with his

8  duties as an officer of Plaintiff.  Accordingly Plaintiffs' Motion for Summary Judgment on

9  Counterclaims Eleven through Fifteen is granted.

10      **THIRD PARTY DEFENDANTS' MOTION ON DEFAMATION**

11      Third Party Defendants, in their Fourth Motion for Partial Summary Judgment as to

12  Counterclaims Six and Ten (#250), seek to dismiss Counterclaims against Eric Benson and David

13  Perkins for breach of Covenant of Good Faith and Fair Dealing.  Defendants concede the motion as

14  to the Sixth Counterclaim insofar as it alleges against Benson and Perkins, breach of the covenant of

15  good faith and fair dealing of the Asset Purchase Agreement. Counterdefendants also request

16  summary judgment on Defendants' Counterclaim Number Ten for Defamation.

17      **ANALYSIS**

18      As indicated above, the allegations of libel/slander are based in part on a statement Benson

19  allegedly made to Glen Gross which Gross has said he does not remember.  Defendants argue that

20  the fact that Gross does not recall does not mean it did not occur.  However, such an inference is

21  insufficient to withstand a motion for summary judgment.  With respect to the claim that employees

22  of PCS had discussed with other employees the reasons for Todd Leany's termination, to-wit:

23  "stealing", the participants assert that comment had reference to Todd Leany's self-dealing

24  transactions with companies in which he held an interest.  Such comments are not defamatory as a

25  matter of law.  The literal truth or falsity is not determinative.  See Maheu v. Hughes Tool Co., 569

26  F.2nd 459, 466 (9th Cir. 1977).  Moreover, the statements between employees discussing the reasons

27  for Leany's termination are privileged in the absence of a showing of actual malice, both as to intra-

28

1  corporate communications and under the litigation privilege doctrine.  See Simpson v. Mars, Inc.,

2  929 P.2d 966 (1997); Jones v. Golden Spike Corp., 623 P.2d 970 (1981) (quoting Prins v. Holland-

3  North America Mortgage, Co., 107 Wash. 206, 181 P. 680 (1919)("[f]or a corporation, therefore,

4  acting through one of its agents or representatives, to send a libelous communication to another of its

5  agents or representatives, cannot be a publication of the libel on the part of the corporation.  It is but

6  communicating with itself.")); see also, Cardtoons, L.C. v. Major League Baseball Players

7  Association, 335 F 3d 1161 (10th Cir. 2003)(quoting Kirschstein v. Haynes, 788 P.2d 941 (Okla.

8  1990)( "as long as the speaker or writer of the defamatory communication has an actual subjective

9  good faith belief that the litigation is seriously contemplated the privilege attaches")).

10       Accordingly, Third-Party Defendants' Motion for a Partial Summary Judgment as to

11  Counterclaims Six and Ten is granted.

12  <center>**PLAINTIFFS' MOTION TO ENFORCE ADR PROVISIONS**</center>

13       Plaintiffs, in their Motion to Enforce Alternative Dispute Resolution Provisions or in the

14  Alternative for Leave to Supplement Pleadings (#296) request that the Court follow the procedures

15  set out in the contracts for disputes over net working capital and profit shortfall.  Plaintiffs assert that

16  they did not include in their pleading, claims for breach of the uncollected accounts receivable or

17  profit shortfall provisions because those claims had not ripened nor could they have ripened until

18  Defendants' obligations arose after April 1, 2011, at the earliest.  Defendants agree that Plaintiffs

19  have not produced any discovery on these issues despite Defendants' request for same.  Defendants

20  further assert that supplementation should be denied because Plaintiffs have asserted claims

21  regarding the uncollected accounts receivable and profit shortfall in their Complaint.

22       It is correct that Plaintiffs' First Amended Complaint, First Claim, alleges Defendants'

23  breach of contract by "failing to meet the performance requirements set forth in the APA relative to

24  the collectability of accounts receivable, and the profitability of Sellers' backlog . . .".  Plaintiffs

25  argue that they could not have asserted breaches of the APA related to brand new claims that only

26  ripened after April 1, 2011.

27

28

1       Plaintiffs also point to Paragraph 10.17 of the Asset Purchase Agreement which provides for

2  arbitration of all disputes arising under the agreement, said disputes to be resolved by arbitration in

3  accordance with commercial arbitration rules of the American Arbitration Association.

4  <div align="center">**ANALYSIS**</div>

5       The Court will not order arbitration under any section of the Asset Purchase Agreement.

6  While the parties did provide for arbitration, Plaintiffs, in filing and pursuing the instant lawsuit,

7  have acted in a manner inconsistent with arbitration.  The Court further finds that prejudice would

8  result to Defendants if this case is now sent to arbitration.  Defendants have invested heavily in this

9  litigation, have responded to a one hundred sixty-nine paragraph First Amended Complaint, and filed

10  and responded to numerous motions for summary judgment.  While it is true that some of the claims

11  did not ripen until recently, Plaintiffs knew or should have known of uncollected accounts receivable

12  and profit shortfall issues arising before April 1, 2011, and possibly even before the filing of the

13  instant litigation.  As stated, Plaintiffs' First Amended Complaint includes the very claims Plaintiffs

14  now seek to arbitrate.  Accordingly, the Court finds that Plaintiffs have waived their right to the

15  alternate dispute resolution procedures of the agreements.  South Broward Hosp. Dist. v. Medquist,

16  Inc., 258 Fed. Appx. 466 (3rd Cir. 2007). However, the Court will allow Plaintiffs to supplement

17  their discovery production to include those damages which could not have been discovered or which

18  had not accrued as of the discovery cut-off date.  The Court finds that no undue prejudice will result

19  to Defendants from such limited supplementation.

20  <div align="center">**CONCLUSION**</div>

21       Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary

22  Judgment (#233) is **GRANTED IN PART AND DENIED IN PART**;

23       IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment

24  (#234) is **DENIED**;

25       IT IS FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment (#235)

26  is **DENIED**;

27

28  <div align="center">18</div>

1        IT IS FURTHER ORDERED that  Defendants' Motion for Partial Summary Judgment

2   (#236) is **GRANTED IN PART AND DENIED IN PART**;

3        IT IS FURTHER ORDERED that Plaintiffs' First Motion for Partial Summary Judgment

4   (#247)  is **GRANTED**;

5        IT IS FURTHER ORDERED that Plaintiffs' Second Motion for Partial Summary Judgment

6   (#248) is **GRANTED**;

7        IT IS FURTHER ORDERED that Plaintiffs' and Third Party Defendants' Third Motion for

8   Partial Summary Judgment (#249) is **GRANTED**;

9        IT IS FURTHER ORDERED that Third Party Defendants' Fourth Motion for Partial

10  Summary Judgment (#250) is **GRANTED**;

11       IT IS FURTHER ORDERED that Plaintiffs' and Third Party Defendants' Motion to Enforce

12  ADR Provisions, or, in the Alternative for Leave to Supplement (#296), is **GRANTED IN PART**

13  **AND DENIED IN PART**.

14       DATED this __30__ day of March 2012.

15

16

17                                          _____

18                                          Kent J. Dawson
                                            United States District Judge

19

20

21

22

23

24

25

26

27

28                                    19