UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PACIFIC COAST STEEL, a Delaware general partnership, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>TAMRA MAE L. HUNT, *et al.*,<br><br>          Defendants. | Case No. 2:09-CV-02190-KJD-PAL<br><br>**ORDER** |

Presently before the Court is Plaintiffs' Motion for Prejudgment Interest (#496). Defendants Tamra Mae L. Hunt, personally, and Tamra Mae L. Hunt as trustee of the Tamra Mae L. Hunt Irrevocable Trust ("the Hunt Defendants") filed a response in opposition (#498) to which Plaintiffs replied (#501). Also before the Court is Plaintiffs' Emergency Motion for Judgment (#503).

I.  Factual Background

This action arose from the purchase by Plaintiffs Pacific Coast Steel and San Diego Steel Holdings Group, Inc. in April 2008, of the assets of Century Steel and related entities for $151,500,000. Defendant Tamara M. Hunt, through the Tamara Mae L. Hunt Irrevocable Trust (the "Hunt Defendants") owned approximately 40.5% of Defendant Century Steel, Inc. and its related entities ("the Century Entities"). Defendant, Todd Lee Leany held a 58.5% interest. Defendants Lynn Leany, and the Lynn M. Leany Family Trust, held a 1% interest.

The purchase price for the Century Entities consisted of $121,500,000 in cash and two promissory notes in the amount of $15,000,000 each as "hold back" to insure that ongoing projects acquired by PCS would reach an agreed upon profitability level of 18%. The two promissory notes consisted of a Pacific Coast Steel note in the amount of $15,000,000 and a San Diego Steel Holdings Group note in the principal sum of $15,000,000. The San Diego Steel Holdings Group note was payable on demand and, as part of the purchase, converted by Todd Leany to stock in San Diego Steel Holdings Group, Inc. The PCS instrument was a term note payable in 3-5 years conditioned on the profitability of work in progress purchased by Plaintiffs from Century as part of the acquisition. From the PCS Note, $12,150,000 was assigned to Tamara Hunt as Trustee of the Tamara Mae L. Hunt Irrevocable Trust. Todd Leany was assigned $2,550,000 and Lynn Leany was assigned $300,000.

The parties signed a letter of intent on or about January 14, 2008 and the parties entered into an Asset Purchase Agreement ("APA") on February 12, 2008. On April 1, 2008, the parties closed the APA. Defendant Hunt signed the APA in her individual capacity, as well as trustee of the Tamra Mae L. Hunt Irrevocable Trust. The APA contained provisions that allowed for certain potential adjustments to the purchase price. One of the contemplated adjustments was a "Profit Shortfall," outlined in Section 2.4(b) of the APA. The APA's Profit Shortfall provision provided an adjustment to the purchase price if the projections regarding the profitability of the work-in-progress proved wrong.

Once it became apparent that there would likely be a significant decrease in the profitability of the work-in progress and when the parties could not agree how to calculate the profit shortfall under the APA, the parties, without consultation with, or the signature of, the Hunt Defendants, executed a Second Codicil on July 16, 2009, which detailed how to calculate the Profit Shortfall. Another contemplated adjustment to the APA's purchase price was the "Uncollected Accounts Receivable" provision, outlined in Section 2.4(a). Under this section, the Sellers – including the Hunt Defendants – agreed to repurchase uncollected accounts receivable. Under the APA, the Profit Shortfall and

Uncollected Accounts Receivable would become due in three years if certain note- satisfying events occurred.  Said events occurred and the Profit Shortfall and accounts receivable became due and payable to Plaintiffs on April 1, 2011. Defendants denied liability and litigation ensued.

In April 2013, Plaintiffs and some defendants signed a Settlement Agreement and Mutual Release where in Todd Leany, Lynn Leany and the Century Entities ("the Settling Defendants") agreed to pay $26 million, secured by a promissory note, to Plaintiffs and stipulated to entry of judgment against Century Steel, Inc. in the amount of $43,214,645.86.  In granting the Settling Defendants' motion for good faith settlement, the Court ordered that the full amount of the $26 million promissory note be offset against any judgment against non-settling Defendants.  The Hunt Defendants, the lone remaining defendants, and Plaintiffs were unable to come to terms of settlement.

After a three week trial, the jury returned a verdict in favor of Plaintiffs on their breach of contract claim.  In answering Question 3 of the verdict form – "State the amount of the damages suffered by Plaintiffs relative to their claim on the  Profit Shortfall and Uncollected Accounts Receivable provision of the APA" – the jury awarded $41,604,280.41.  In response to the other verdict form questions regarding Plaintiffs' damages under either the APA's Net Working Capital provision or the sellers' shareholder distributions and employee bonuses prior to the APA closing, the jury did not award any damages.  Plaintiffs now move the Court for an award of prejudgment interest on the verdict.

II. Analysis

In Plaintiffs' reply, they concede that Delaware law should govern an award of prejudgment interest. Plaintiffs also concede that the correct prejudgment interest rate under Delaware law for the applicable period is 5.75%. The only issue left for determination by the Court is the amount of prejudgment interest that should be awarded. Plaintiffs argue that the Court should award prejudgment interest based on the full amount of the verdict without offsetting the $26 million settlement received from the Settling Defendants.

In awarding prejudgment interest, the Court has "broad discretion, subject to the principles of fairness." Summa Corp. v. Trans World Airlines, Inc., 540 A.2d 403, 409 (Del. 1998). The Court looks at the economic reality of the entire transaction or sets of transactions before awarding interest. See Fleet Financial v. Advanta Corp., 2003 WL 22707336 *4 (Del. Ch. Nov. 7, 2003)(citing Smith v. Nu-West Indus., 2001 Del. Ch. LEXIS 9, at *4-*5, 2001 WL 50206 (Del. Ch. Jan. 12, 2001)). Generally, courts award prejudgment interest in order to compensate parties for their lost opportunity cost. See Fleet Financial, at *5 (citing Ryan v. Tad's Enters., Inc., 709 A.2d 682, 705 (Del. Ch. 1996)).

The main factor favoring an award of prejudgment interest based on the full verdict without an offset is that Plaintiffs' claim against the Hunt Defendants was based on their absolute, unconditional and continuing guaranty of the performance of the Settling Defendants in the APA transaction. Thus, the Hunt Defendants would have been jointly and severally liable for the entire Profit Shortfall and Uncollected Accounts Receivable if no settlement had been reached with the other Defendants. Therefore, Plaintiffs are correct that Fleet Financial is factually distinguishable from the present case, because Fleet involved successful competing claims and counterclaims. Here, the Hunt Defendants' counterclaims were unsuccessful. However, the settlement agreement is an intervening event that the Court has already ruled that at a minimum requires the judgment against the Hunt Defendants to be offset by $26 million.

Looking at the economic realities of all the transactions, including the settlement, the Court finds that equity requires that the prejudgment interest be calculated based on the jury verdict less the $26 million settlement. While the Hunt Defendants, as guarantors, were jointly and severally liable for the Profit Shortfall and Uncollected Accounts Receivable, it would not be equitable for them to bear the full burden of the prejudgment interest which would be one of the "claims, demands, damages, sums of money, causes of action, and liabilities of any kind or nature, whether in law or equity" that Plaintiffs agreed to release and discharge as part of the settlement agreement. See Defendants' Motion for Good Faith Settlement, Doc. No. 420, Exhibit A, Settlement Agreement and Mutual

Release, p. 13-14.  Further, the Hunt Defendants were bound to the Profit Shortfall calculation that was described in Codicil 2, to which they were not a signatory party and for which they were unable to negotiate the terms.  Further, equity favors the Hunt Defendants, because other than disputing the amount due under the Profit Shortfall and Uncollected Accounts receivable, it is undisputed that they have clean hands in the transactions at issue.[1]

Accordingly, the Court awards prejudgment interest at the agreed rate of 5.75% annually from April 1, 2011 to the date that judgment is entered February 25, 2014 (which is two years and 323 days) for a total amount of prejudgment interest of $2,588,493.25. Therefore, based on the jury verdict award of $41,604,280.41, less the $26,000.000.00 offset for the settlement amount, plus an award of $2,588,493.25 in prejudgment interest, the Clerk of the Court is ordered to enter Judgment for Plaintiffs and against Defendant Tamra Mae L. Hunt, personally, and Tamra Mae L. Hunt as trustee of the Tamra Mae L. Hunt Irrevocable Trust, in the amount of $18,192,773.66.

III.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Prejudgment Interest (#496) is **GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that Plaintiffs' Emergency Motion for Entry of Judgment (#503) is **DENIED as moot**;

///
///
///
///
///
///

---

[1] Particularly, Defendants were not party to the alleged wrongdoings of Hunt's brother, Todd Leany, that led to the termination of his continued employment, cancellation of the PCS Note under the APA, and to the ensuing litigation.

5

1  IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiffs and against Defendants Tamra Mae L. Hunt, personally, and Tamra Mae L. Hunt as trustee of the Tamra Mae L. Hunt Irrevocable Trust in the amount of $18,192,773.66.

DATED this 25th day of February 2014.

_____
Kent J. Dawson
United States District Judge