UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PACIFIC COAST STEEL, *et al.*,

    Plaintiffs,

v.

TAMRA MAE L. HUNT, *et al.*,

    Defendants.

Case No. 2:09-CV-02190-KJD-PAL

**ORDER**

    Presently before the Court is the Motion for New Trial (#508) of Defendants Tamra Mae L. Hunt, individually, and as Trustee of the Tamra Mae L. Hunt Irrevocable Trust ("Defendants"). Plaintiffs filed a response in opposition (#509).

I.  Background

    This action arose from Pacific Coast Steel (PCS) and San Diego Steel Holdings Group, Inc. April 2008 purchase of the assets of Century Steel and related entities for $151,500,000. Sellers, Tamara M. Hunt, through the Tamara Mae L. Hunt Irrevocable Trust, held a 40.5% interest, Lynn Leany, through the Lynn M. Leany Family Trust, held a 1% interest, and Todd Lee Leany, through the Todd Lee Leany Irrevocable Trust, held a 58.5% interest in the Century entities.

    The purchase price for the Century entities consisted of $121,500,000 in cash and two promissory notes in the amount of $15,000,000 each as "hold back" to insure that ongoing projects

acquired by PCS would reach an agreed upon profitability level. The two promissory notes consisted of a Pacific Coast Steel note in the amount of $15,000,000 and a San Diego Steel Holdings Group note in the principal sum of $15,000,000. The San Diego Steel Holdings Group note was payable on demand and, as part of the purchase, converted by Todd Leany to stock in San Diego Steel Holdings Group, Inc. The PCS instrument was a term note conditioned on the profitability of work in progress purchased by Plaintiffs from Century as part of the acquisition. From the PCS Note, $12,150,000 was assigned to Tamara Hunt as Trustee of the Tamara Mae L. Hunt Irrevocable Trust. Todd Leany was assigned $2,550,000 and Lynn Leany was assigned $300,000.

The Asset Purchase Agreement provided that on the day of closing, Plaintiffs would receive net working capital of at least $59,679,400. PCS actually received $60,666,908 in net working capital, or $987,508 more than required by the express terms of the contract. It is alleged, however, that Defendants manipulated the net working capital through various mechanisms, including shareholder distributions, bonuses, adjustments to notes receivable and pay down of accounts to deprive Plaintiffs of the benefit of their bargain.

Plaintiffs assert that they paid an acquisition premium of $95,000,000 over and above the value of the Century entities' assets and that this premium was based upon the Century entities' customer relations and Todd Leany's agreement to become an employee and officer in PCS.

Pursuant to the Asset Purchase Agreement, Century was required to deliver to PCS a Work-In-Progress Report showing current projects as of the time of closing. Within fifteen days of the due date of the PCS note, PCS was to deliver to Century, a written statement showing the actual cost on each project to determine whether the projects had met the agreed upon profitability level. If there was a profit shortfall, the Century entities would be required to repay the deficiency or offset against any amounts outstanding under the PCS note.

The Asset Purchase Agreement required that the Century owners, including Defendants Tamara Hunt, Lynn Leany and Todd Leany, personally guaranty certain contractual obligations of the Sellers under the Asset Purchase Agreement. That Agreement also contained certain representations

and warranties concerning current and former directors, officers and employees of the Century entities. Specifically, Section 4.25 of the Asset Purchase Agreement provided:

> <u>Related Party Transactions</u>.   Except as set forth in Schedule 4.25, no current or former directors, officers or employees of any Century Entity nor any affiliate of any Century Entity, (a) has or during the last three fiscal years has had any direct or indirect interest (i) in, or is or during the last three fiscal years was a director, officer, or employee of any Person that is a client customer, supplier, lessor , lessee, debtor, creditor or competitor of any Century Entity, or (ii) in any property, asset or right that is owned or used by any Century Entity in the conduct of their business, or (b) is or during the last three fiscal years has been a party to any agreement or transaction with any Century Entity, excluding stock option and/or purchase agreements.

At the time the parties closed the asset purchase transaction, Plaintiffs and Todd Leany entered into an Employment Agreement whereby PCS agreed to employ Todd Leany as Executive Vice-President of PCS for a five-year term ending March 31, 2013, unless the agreement was sooner terminated. The Agreement provided a five year term of employment, compensation, benefits, confidentiality of trade secrets and other confidential information, a non-competition covenant, and termination.

Following closing of the Asset Purchase Agreement on April 1, 2008, Todd Leany proceeded to work for PCS as Executive Vice President of the company.

In June of 2009, the parties commenced discussions concerning a potential profit shortfall. These discussions culminated in the negotiation of a "Second Codicil". Plaintiffs assert that the Second Codicil clarified the method for calculating the profitability rate of 18%. Defendants assert that it completely altered the profitability determination. The document was negotiated by Defendants' attorney, Bud Stoddard, Esq., and signed by Todd Leany and Lynn Leany as officers of the Century entities on July 16, 2009. The Second Codicil was also signed by representatives of Plaintiffs, however, Tamara Hunt did not sign the document.

This action was commenced on November 16, 2009. Plaintiffs asserted claims for declaratory relief, injunction, tort, breach of contract and rescission. Defendants asserted counterclaims and third party claims for civil conspiracy and breach of the covenant of good faith

and fair dealing. Prior to trial Plaintiffs and all defendants other than Tamra Hunt individually and as Trustee for the Tamra Mae L. Hunt Irrevocable Trust settled their claims. The only claims remaining at trial were Plaintiffs' claims for breach of contract and breach of the covenant of good faith and fair dealing and Defendants' claims for civil conspiracy and breach of the covenant of good faith and fair dealing.

On November 20, 2013, the jury found that Defendants breached the APA and awarded damages of $41,604,280.44. Defendants did not prevail on any claims at trial. Final Judgment (#507) was entered on February 25, 2014. Defendants filed the present motion on March 25, 2014.

II.  Standard on Rule 59(a) Motion for New Trial

Federal Rule of Civil Procedure 59(a)(1) provides that: "The court may, on motion, grant a new trial on all or some of the issues-and to any party-as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court [.]" Rule 59 does not specify the grounds on which a motion for a new trial may be granted. *Zhang v. Am. Gem Seafoods, Inc.,* 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the court is "bound by those grounds that have been historically recognized." *Id.* "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.' " *Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940)). A new trial may be granted only if the verdict is 'contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice. *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n. 15 (9th Cir. 2000)). "The grant of a new trial is 'confided almost entirely to the exercise of discretion on the part of the trial court.' " *Murphy v. City of Long Beach,* 914 F.2d 183, 186 (9th Cir. 1990) (quoting *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33 (1980)). A new trial should not be granted, unless after giving full respect to the jury's findings, the Court "is left with the definite and firm conviction that a

mistake has been committed." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

To obtain a new trial based on erroneous evidentiary rulings, the moving party must show that the rulings were both erroneous and substantially prejudicial. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995). The burden of persuasion is on the moving party and is very high. *See United States v. Redfield*, 197 F. Supp. 559, 562 (D. Nev. 1961), *aff'd* 295 F.2d 249 (9th Cir. 1961)("[T]he burden of demonstrating prejudicial error is on the [movant]."

III.  Analysis

### A.  Production of Hunt's Tax Returns

Defendants assert that the Court's order requiring Hunt to produce her amended tax returns after ruling on Plaintiff's Motion to Compel (#454) was reversible error. The motion was made on November 1, 2013, three days before the start of trial. After allowing Defendants to respond and hearing argument, the Court ordered production of the tax returns. Defendants cite no authority for the proposition that the ruling was not legally sound and was prejudicial. Though the magistrate judge had previously ruled that Defendant Hunt did not have to produce her tax returns, the motion was based on amendments made after the magistrate judge's order. Further the Court has inherent jurisdiction to modify, alter or revoke a non-final order. *See United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000). Defendants' motion for a new trial on this ground is denied.

### B.  Evidence regarding the Second Codicil

Again, Defendants fail to cite to the record or to cite any legal authority for the proposition that the Court's ruling regarding the effect and operation of the second codicil during the trial was a miscarriage of justice. Essentially, Defendants reiterate the arguments they made at trial. A motion for reconsideration should not merely present arguments previously raised; that is, a motion for reconsideration is not a vehicle permitting the unsuccessful party to reiterate arguments previously presented. See Merozoite v. Thorp, 52 F.3d 252, 255 (9th Cir. 1995); Beentjes v. Placer County Air Pollution Control District, 254 F.Supp.2d 1159, at 1161 (E.D. Cal. 2003); Khan v. Fasano, 194 F.

Supp. 2d 1134, 1136 (S.D. Cal. 2001) ("A party cannot have relief under this rule merely because he or she is unhappy with the judgment."). Therefore, the Court denies the motion for new trial based on the Court's in-trial rulings based on the guaranty and the second codicil.[1]

### C. The Court's "attitude" toward Defendants and counsel

While Defendants do cite accurate authority that they are entitled to dispassionate and impartial judicial authority, they entirely fail to cite to the record.[2] Instead, Defendants provide a biased synopsis of testimony and interaction with the court. Defendants even complain of interactions in which the Court ultimately issued favorable rulings to them. Judicial rulings alone are almost never a valid basis for demonstrating bias or prejudice. *See Litkey v. U.S.*, 510 U.S. 540, 555 (1994). "Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* Thus, Defendants have failed to meet their burden in establishing that the verdict was against the manifest weight of the evidence or that the trial was unfair. The Court denies the motion for new trial on the claim that they were unfairly prejudiced by the Court's conduct.

### D. Jury Instruction 24

Defendants assert that the Court erred by instructing the jury, in Instruction 24, that if the Jury found that Century Steel owed Plaintiffs money under the APA and the Second Codicil, that the Jury must find Defendants liable for "the full amounts." Defendants argue that they sought the following addition to the instruction: "It is up to you, the jury, to decide what the full amount is." The Court declined to give the instruction as sought by Defendants. Defendants offer the hearsay, unverified statements of the jury foreperson as evidence that the Court's instruction confused the jury. "Federal

---

[1] The Court notes that despite being given the opportunity to brief and argue the issue during trial, Defendants have now made new arguments attempting to distinguish the cases the Court relied on in issuing its continuing guaranty ruling. Clearly, Defendants had an opportunity to make these arguments previously but failed to do so.

[2] "It is problematic for a party failing to cite to the record in support of a motion for new trial to overcome the substantial burden of proving the verdict was against the manifest weight of the evidence or that the trial was unfair." *McClain v. Anchor Packing Co.*, 1996 WL 417540 (N.D. Ill. July 23, 1996) *aff'd sub nom. McClain v. Owens-Corning Fiberglass Corp.*, 139 F.3d 1124 (7th Cir. 1998).

Rule of Evidence 606(b) bars the use of a juror's mental processes to inquire into the validity of a verdict." *United States v. Span*, 75 F.3d 1383, 1390 n.8 (9th Cir. 1996).  "The Court may not receive a juror's affidavit or evidence of a juror's statement [on the process of deliberation]." Fed. R. Evid. 606(b).  Therefore, the Court denies the motion for new trial based on Jury Instruction 24.

### E.  Meeting of the Minds Instruction

While erroneously instructing the jury is grounds for a new trial, the failure of the court to give Defendants proffered "meeting of the minds" instruction was not erroneous.  The Court had already ruled that Defendants were bound by the APA and the Second Codicil.  Therefore, the "meeting of the minds" was not an issue presented to the jury and such an instruction not necessary.  Therefore, the Court denies the motion for new trial on this ground.

### F. Evidence of Settlement of the Other Defendants

Unfortunately, due to Defendants repeated reference to the settling defendants in this action, the Court eventually gave an instruction referencing litigation involving "other sellers and owners" who entered into a settlement agreement with Plaintiffs.  The jury was properly instructed to disregard that settlement in consideration of the claims between Plaintiffs and Defendants.  "Under the doctrine of curative admissibility, the introduction of inadmissible evidence by on party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *Nguyen v. Sw. Leasing & Rental Inc.*, 282 F.3d 1061, 1067 (9th Cir. 2002).  Therefore, the Court denies the motion for new trial based on the curative instruction.

### G.  Expert Testimony Regarding Gross Profit Shortfall

Defendants have merely reargued their position at trial regarding the expert testimony that should or should not be allowed and urging the Court to reconsider its previous position by granting a new trial.  A motion for reconsideration is not a vehicle permitting the unsuccessful party to reiterate arguments previously presented.  *See Merozoite*, 52 F.3d at 255 (9th Cir. 1995).  The Court stands by its ruling that the excluded testimony would not assist the jury in understanding the

evidence or determining a fact in issue. *See Fed. R. Evid.* 403; *United States v. Scholl*, 166 F.3d 964, 974 (9th Cir. 1999). Therefore, Defendants motion for a new trial based on excluded expert testimony is denied.

### H.  Failure to Allow "Course of Conduct" Testimony

Defendants, finally, argue that the Court erred by excluding evidence of other agreements Plaintiffs entered into and litigation resulting from those agreements. Defendants assert that the evidence was necessary for Hunt's bad faith claim. Again, Defendants have cited no legal authority nor factual authority from the transcript for their claim. The Court did exclude evidence for which there was no foundation, no relevance or was hearsay. Defendants have failed to meet their heavy burden in demonstrating that the Court's rulings were erroneous and that they were substantially prejudiced. Therefore, the Court denies Defendants' motion for a new trial on this ground.

## IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for New Trial (#508) is **DENIED**;

IT IS FURTHER ORDERED THAT the Motion to Stay Execution of Judgment is **DENIED as moot.**

DATED this 18th day of July 2014.

_____
Kent J. Dawson
United States District Judge